*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LLH, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

Petitioner-Appellee,

v

LLH,

Respondent-Appellant.

UNPUBLISHED
August 10, 2026
11:19 AM

No. 374771
Wayne Circuit Court
Family Division
LC No. 2022-001313-DL

Before: LETICA, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the February 27, 2025 order of adjudication that placed him in a detention facility. Finding no errors warranting reversal, we affirm.

## I. BACKGROUND

Respondent was twice found in possession of a stolen motor vehicle in October 2022. Respondent's involvement in one of those instances resulted in a petition alleging that he was in possession of a stolen car contrary to MCL 750.535(7), possessed burglar tools in violation of MCL 750.116, and maliciously destroyed property by breaking the window of a car in violation of MCL 750.377a(1)(c)(*i*). Respondent pleaded to the factual allegations underlying this petition in March 2023, and the trial court accepted respondent's plea.[1] Following the hearing, the court entered an order of disposition that placed respondent on in-home probation. The terms of

---

[1] A separate petition was filed about the other October 2022 incident, which involved respondent being in possession of another stolen vehicle and fleeing from police. That petition was dismissed after respondent pleaded to the petition at-issue in this appeal.

respondent's probation required respondent to, among other things, attend school, avoid "negative police contact," and refrain from using substances, including marijuana.

Respondent struggled to comply with the terms of his probation, particularly the term requiring him to avoid using substances. Respondent continually tested positive for marijuana, so following an October 2023 probation review hearing, respondent was "placed on intake probation with the [Supervised Treatment for Alcohol and Narcotic Dependency (STAND)] program." Upon respondent's placement in STAND, his probation with the court was terminated.

At an October 2024 review hearing,[2] the STAND program coordinator Christopher Whittington reported that respondent only "recently re-enrolled in school"; had continued testing positive for marijuana; and currently had "a pending charge in Macomb [County]." Whittington testified that, very soon, "some decisions . . . will be made regarding" respondent's continued involvement in the program. The order following this hearing stated that the prior order and services would continue.

The next review hearing took place in January 2025. Whittington requested that respondent be allowed to continue in the STAND program, but he noted that respondent had "been fairly inconsistent" about returning his case manager's calls, which made it difficult to "find out what's going on with him, status wise." Whittington also reported that respondent needed to be "more consistent [with] drug screens." Those were, according to Whittington, "the two things that stand out regarding [respondent]." The order following the hearing allowed respondent to remain in the STAND program pursuant to Whittington's recommendation.

On February 15, 2025, a supplemental petition was filed alleging that respondent violated his probation by, among other things, failing to attend school, failing "to comply with the guidelines of the STAND Program," and testing positive for marijuana.

A hearing on the supplemental petition was held on February 27, 2025. Respondent indicated his intent to plead to allegations in the petition, but before accepting respondent's plea, the court laid out the possible penalties that respondent could face. After respondent confirmed that he understood the potential consequences of his plea, he pleaded to some of the factual allegations in the petition—he admitted that he failed to comply with the rules of the STAND program by testing positive for marijuana. All parties and the trial court agreed that this constituted a probation violation, and the court heard argument about the parties' preferred dispositions.

---

[2] Before this hearing, in November 2023, respondent was found in possession of another stolen vehicle in violation of MCL 750.535(7), resulting in another petition. Respondent pleaded no contest to the allegations in this second petition, and in the ensuing order of disposition, respondent was placed back on probation. This probation was terminated the following day, however, because respondent was still in the STAND program, and respondent's probation officer wanted respondent "to complete the program."

The prosecution recommended out-of-home probation.[3] The prosecutor stated that he was reluctant to recommend out-of-home probation "for positive marijuana screens," but believed that such a recommendation was appropriate here because of respondent's history of run-ins with police involving stolen vehicles going back to 2022. The prosecutor also noted that respondent had an outstanding case for carjacking possibly involving a firearm in Macomb County.

The trial court declined to issue a dispositional order and ruled instead that respondent was to be placed in a juvenile detention facility pending a dispositional hearing, by which the court hoped that respondent's Macomb County case would be resolved. The court explained that if respondent was sent to prison in his Macomb County case, then the court would close this case, but if he was not sent to prison in his Macomb County case, then the court would place respondent on out-of-home probation. The court set a bond of $100,000. The court understood its ruling to be "the last option," explaining that it had "given [respondent] chance, after chance, after chance, after chance," and this was his "last chance." The court then provided a lengthy summary of respondent's drug-screening results, including how he missed certain testing periods because he was being detained in unrelated criminal matters, including on a charge for "some form of murder" that was ultimately dismissed.[4]

Following this hearing, the trial court entered a new order of adjudication that was updated to reflect that respondent pleaded to violating his probation. The order stated that respondent was to be placed in the juvenile detention facility with a bond set at $100,000, and he was "formally removed from the STAND program." The order also set the matter for a dispositional hearing.

This appeal followed.

## II. DETENTION SCREENING TOOL

On appeal, respondent first argues that the trial court reversibly erred by not employing a detention screening tool before ordering respondent into a detention facility.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve an issue for appellate review, the issue must be raised in the trial court. See *In re Hildebrant*, 216 Mich App 384, 388; 548 NW2d 715 (1996). Respondent never argued below that the trial court needed to utilize a detention screening tool before ordering respondent into detention, so this issue is unpreserved.[5]

---

[3] The parties and the trial court referred to out-of-home probation as "level 2 probation."

[4] In a later motion, respondent represented that he was actually charged with assault with intent to murder, and the charge was dismissed after it was established that respondent was not involved.

[5] Respondent contends that this issue is preserved because he "advocat[ed] for less restrictive remedies," but that argument had nothing to do with the court's use of a detention screening tool, so it was not sufficient to preserve this issue.

Unpreserved issues are reviewed for plain error affecting substantial rights. *In re Diehl*, 329 Mich App 671, 701; 944 NW2d 180 (2019). To be entitled to relief under the plain-error standard, a respondent must show that (1) an error occurred, (2) the error was plain, meaning clear or obvious, and (3) the error affected the respondent's substantial rights. *Id*. A respondent satisfies the third element if they establish that the error affected the outcome of the lower court proceedings. *Id*.

### B. ANALYSIS

Respondent does not contest that he fell into one of the categories of juveniles under MCL 712A.15(2) that a court can order be detained "pending a hearing"[6] upon the filing of a supplemental petition as provided in MCL 712A.15(1)(b). We therefore assume for purposes of this opinion that these statutory requirements were satisfied.

Respondent instead argues that the trial court erred by failing to use a detention screening tool before ordering respondent detained as required by MCL 712A.15(3). That subsection provides:

> Before a juvenile may be detained in a secure facility pending hearing, an individual or agency designated by the court shall use a detention screening tool on the juvenile. Before detaining a juvenile, the court shall consult the results of the detention screening tool and follow any rules regarding its use that are promulgated by the supreme court. The court shall share the results of the detention screening tool with all parties before a juvenile's detention hearing. The state court administrative office, under the supervision and direction of the supreme court and in collaboration with local courts, shall determine the appropriate detention screening tool. . . . [MCL 712A.15(3).[7]]

MCR 3.907(D) is the court rule that implements MCL 712A.15(3), and it provides:

> An individual or agency designated by the court must use a detention screening tool on a juvenile, and the court must consider the results of the tool before a juvenile may be detained in a secure facility pending hearing. A new tool must be used and considered before each placement in a secure facility.
>
> The court must share the results of the detention screening tool with all parties at least 7 days before a detention hearing as provided in MCR 3.922(B)(4).[8]

---

[6] The trial court ordered respondent to a detention facility pending a dispositional hearing.

[7] This subsection was enacted by 2023 PA 290, which became effective October 1, 2024. It was therefore in effect when the trial court ordered respondent into detention in February 2025.

[8] MCR 3.922(B)(4) provides the documents, reports, and assessments that must be disclosed to all parties "[a]t delinquency dispositions, reviews, designation hearings, hearings on alleged violation of court orders or probation, and detention hearings."

Clearly, MCL 712A.15(3) and MCR 3.907(D) required the trial court to use a detention screening tool on respondent before the court was permitted to order respondent detained. The statute repeatedly uses the word "shall," and the court rule repeatedly uses the word "must," both of which demonstrate the same thing—that use of a detention screening tool is a mandatory precondition to ordering a juvenile into a detention facility. See *People v Haveman*, 328 Mich App 480, 488; 938 NW2d 773 (2019) (explaining that use of the word "shall" denotes a mandatory directive); *People v Fosnaugh*, 248 Mich App 444, 449; 639 NW2d 587 (2001) (recognizing that use of the word "must" denotes a mandatory directive).

Despite this clear requirement, nothing in the record suggests that the trial court in this case used a detention screening tool before ordering respondent into a detention facility. The court did not mention the detention screening tool on the record, and in its order following the hearing on the supplemental petition, the court did not check the box indicating that the court had "considered the results of a detention screening tool conducted on the juvenile." Because the mandates in MCL 712A.15(3) and MCR 3.907(D) are clear, we conclude that the trial court plainly erred by not using a detention screening tool before ordering respondent into a detention facility.

The more difficult question is whether this plain error affected respondent's substantial rights. This question is difficult because neither party on appeal explains what the detention screening tool is or what it consists of. The only thing that the parties have told this Court about the detention screening tool is that the trial court was required to use it before ordering respondent into a detention facility. See MCL 712A.15(3) and MCR 3.907(D). This results in something of a stalemate between the parties because, without any information about the detention screening tool, we cannot say whether the trial court's failure to use the tool prejudiced respondent. In such circumstances, the respondent cannot prevail because the respondent has the burden of establishing that a plain error affected his substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.") (quotation marks and citation omitted).

That said, we can address respondent's contention that the trial court could not "make [an] informed placement decision[]" without using a detention screening tool. On that score, we conclude that the trial court's lengthy explanation for its decision to order respondent into a detention facility reflected that the trial court carefully considered its options and did not order respondent into a detention facility lightly. The court explained that it viewed detention as the final option after all other avenues were exhausted, and it opined that those avenues had indeed been exhausted. That conclusion was well supported.

Respondent came under the court's jurisdiction after he was twice caught driving stolen motor vehicles, and he was placed on in-home probation. When he was struggling to comply with the terms of his probation—mainly refraining from using marijuana—he was placed into the STAND program to help address his substance abuse. While in that program, respondent was found in possession of yet another stolen car, but his petition for that charge was dismissed because a different court agreed with a probation officer's recommendation to allow respondent an opportunity to complete the STAND program. Respondent squandered that opportunity, however, because he could not refrain from using marijuana. The trial court went through in detail how respondent repeatedly tested positive for marijuana in violation of his probation, and how the court was repeatedly overlooking respondent's positive tests and giving him chances to stop using. And

-5-

while all of this was going on, respondent was involved in criminal cases in a different county. Almost two years after respondent pleaded to the petition giving rise to this case, he was still testing positive for marijuana and had an active criminal case in Macomb County.

While we are uncertain what a detention screening tool would have shown had the trial court utilized one for respondent, we reject respondent's argument that the trial court was unable to make an "informed placement decision[]" without use of a detention screening tool. The trial court's explanation for its decision to place respondent in a detention facility demonstrated that the decision was both informed and considered. Respondent has thus not established that his substantial rights were affected by the trial court's plain error of not using a detention screening tool before placing respondent into a detention facility.

### III. COMPLIANCE WITH OTHER STATUTES AND COURT RULES

Respondent contends that the trial court also erred by failing to comply with various statutes and court rules before ordering respondent into a detention facility.

### A. STANDARD OF REVIEW

Whether the trial court complied with the dictates of a statute or court rule presents a question of law, reviewed de novo. See *In re Tiemann*, 297 Mich App 250, 257; 823 NW2d 440 (2012).

### B. ANALYSIS

Respondent argues that the trial court failed to comply with the requirements of MCL 712A.18(1) before ordering respondent into a detention facility. That subsection provides that "the court shall order the juvenile returned to the juvenile's parent if the return of the juvenile to the juvenile's parent would not cause a substantial risk of harm to the juvenile or society." MCL 712A.18(1). Respondent contends that the trial court failed to comply with this subsection because it did not find that returning respondent to his mother would cause a substantial risk of harm to respondent or society before the court ordered respondent into a detention facility.

The fundamental problem with this argument is that MCL 712A.18 addresses orders of disposition, and at issue on appeal is an order of adjudication. The order of adjudication placed

respondent in a detention facility pending a dispositional hearing as permitted by MCL 712A.15(1).[9, 10]

The same fundamental problem underlies respondent's arguments that the trial court failed to comply MCR 3.943(E)(2) because it failed to consider less severe sanctions before ordering respondent into a detention facility. That court rule, like MCL 712A.18, applies to dispositional orders. Again, the order at issue on appeal is an order of adjudication.

Respondent lastly argues that the trial court erred by setting a bond. According to respondent, a bond is only permissible in juvenile-delinquency cases following a preliminary hearing "to ensure the appearance of the juvenile for a trial." Assuming that respondent is correct that the trial court should not have ordered a bond, the alternative was the court ordering respondent detained without bond. So, if the court erred by setting a bond, the error was harmless. See MCR 2.613(A).

Affirmed.

/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

[9] "In the case of a juvenile concerning whom a complaint has been made or a petition has been filed under this chapter, the court may order the juvenile, pending hearing, detained in a facility as the court designates." MCL 712A.15(1). MCR 3.943(B) also recognizes that a juvenile can be detained following an adjudication while a dispositional hearing is pending by setting a time limit on how long after the adjudication a dispositional order must be entered "[w]hen the juvenile is detained."

[10] Even if the trial court was required to order respondent returned to his mother unless doing so would "cause a substantial risk of harm to [respondent] or society," MCL 712A.18(1), we would conclude that the trial court's explanation of its decision supported a finding that returning respondent to his mother posed such a risk. The trial court explained at length how respondent was repeatedly given chances to follow the law and avoid using marijuana, but he was unable to abstain from marijuana or avoid getting into trouble with police while in his mother's care, leaving the court with no option but to detain respondent pending his dispositional hearing. If the court erred by not making this finding explicit, the error was harmless.